UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

| | |
|---|---|
| HARRY CARLOS OWEN, | ) |
| Petitioner, | ) Civil Action No. 14-CV-158-HRW |
| v. | ) |
| MICHAEL SEPANEK, WARDEN, | ) **MEMORANDUM OPINION** |
| Respondent. | ) **AND ORDER** |

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Harry Carlos Owen is a prisoner confined by the Bureau of Prisons ("BOP") in the Federal Correctional Institution ("FCI")-Ashland, located in Ashland, Kentucky. Proceeding without counsel, Owen has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his security classification at FCI-Ashland. [D. E. No. 1][1]

The Court conducts an initial review of habeas corpus petitions. 28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). The Court must deny the petition "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court evaluates Owen's petition under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts Owen's factual allegations as true, and

---

[1] Owen has paid the $5.00 filing fee. [D E. No. 5]

1

liberally construes his legal claims in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Having reviewed the petition, the Court must deny relief because Owen may not assert his claims in a habeas corpus proceeding brought under 28 U.S.C. § 2241.

## OWEN'S CRIMINAL HISTORY

In September 2000, Owen was charged in a West Virginia federal court with conspiring with his co-Defendants and Ronald Cleveland Owen, an uncharged coconspirator, to knowingly and intentionally distribute one thousand kilograms or more of a mixture or substance containing a detectable amount of marijuana, oxycodone and hydromorphone, in violation of 21 U.S.C. §§ 841(a)(1), 846. *United States v. Harry Carlos Owen*, No. 5:00-CR-185-1 (S. D. W. Va. 2000) [R. 1, therein] In count sixteen of that indictment, Owen was also charged with violating 21 U.S.C. § 843(b) by knowingly and intentionally using the public telephone system in committing, causing, and facilitating the commission of a felony in violation of 21 U.S.C. § 846. [*Id.*]

On March 15, 2001, the jury found Owen guilty as charged in counts one and sixteen, and completed a Special Verdict/Interrogatories finding him guilty of, among other things, conspiring to distribute 1,000 kilograms or more of marijuana. [*Id.*, R. 402, 404, therein] On July 12, 2001, the district court sentenced Owen to a 324-month prison term on the § 846 drug offense, and to a 48-month prison sentence on the § 843 telephone offense, but ordered the prison terms to run concurrently. [*Id.*, R. 568, therein]

In June 2002, Owen filed a motion to vacate his sentence under 28 U.S.C. § 2255, challenging both his conviction and his sentence on numerous grounds. [*Id.*, R. 750, 751,

therein] On December 18, 2003, the district court denied Owens' § 2255 motion, finding that none of his arguments had merit. [*Id.*, R. 843, therein]

In July 2004, the district court granted Owen's motion to supplement his § 2255 motion to assert a claim based on the Supreme Court's then recently rendered decision in *Blakely v. Washington*, 542 U.S. 296 (2004). [*Id.*, R. 870, therein] On April 25, 2005, the Magistrate Judge issued a Report and Recommendation ("R & R"), concluding that Owen's supplemental § 2255 motion should be denied because *Blakely* did not apply retroactively to cases on collateral review. [*Id.*, R. 887, therein] Owen filed objections, but on September 16, 2005, the district court adopted the R & R, finding that it was well-reasoned and supported by the case law. [*Id.*, R. 906, 907, therein] Owen appealed, but the Fourth Circuit Court of Appeals denied him a certificate of appealability. [*Id.*, R. 955, 956, therein; *see United States v. Harry Carlos Owen*, No. 05-7720 (4th Cir. Jun. 1, 2006)]

The BOP's website states that Owen, BOP Register NO. 06330-088, has a projected release date of March 12, 2024. *See* http://www.bop.gov/inmateloc/ (last visited on November 4, 2014).

## CLAIMS ASSERTED IN THE § 2241 PETITION

Owen states that prior to March 2014, he had a "moderate" security classification which ensured him placement in a prison camp at some point in 2014, which could have been ten (10) years prior to the date of his projected release from the BOP's custody in March 2024. [D. E. No. 1, pp. 5-6] Owen asserts that under 18 U.S.C. §§ 3621(b), 4042(a)(2) and 4081, he had a vested liberty interest in both his lower security classification and his transfer to a prison camp in March 2014.

3

Owen states that in September 2006, the BOP issued its Program Statement 5100.08, entitled *Inmate Security Designation and Custody Classification*, in which it amended the severity classification tables applicable to offenders who were convicted after September 2006 and created a variable, known as a Public Safety Factor ("PSF"). Owen states that the PSF, as applied to him, resulted in him having a higher security classification and prevented him from being transferred to a lower security BOP facility or to a prison camp.

Owen alleges that in March 2014, at the very point in time when he became eligible to for a transfer to a federal prison camp, FCI-Ashland Unit Manager Brian Sparks arbitrarily and capriciously modified his offense severity classification from "moderate" to "greatest," thus preventing his transfer to the prison camp. Owen alleges that Sparks exceeded his authority and abused his power by increasing his security classification; that such a decision could be made only by the BOP's Designation and Sentence Computation Center; that he (Owen) was not provided with advance notice of Sparks' decision to increase his security classification; and that his higher security classification was the result of "…willful and deliberate act of discrimination by FBOP staff in retaliation against the petitioner for his political beliefs." [D. E. No. 1, p. 3]

Owen contends that the BOP's decision to assign him a negative PSF under Program Statement 5100.08 amounts to an impermissible retroactive or *ex post facto* application of the policy, in violation of the U.S. Constitution, Art. I, § 9, cl. 3, and a violation his right to due process of the law guaranteed under the Fifth Amendment of the U.S. Constitution. Owen claims that the PSF decision was impermissibly based on the FCI-Ashland Unit Team's "personal dislikes, emotional bias, and prejudices" [D. E. No. 1, p. 2], and that the BOP has

4

failed to properly apply the five factors set forth in 18 U.S.C. § 3621(b) relative to his placement in a lower security BOP facility.

Owen asserts that he has fully exhausted his claims through all levels of the BOP's administrative remedy process. *See id.*, pp. 4-5. Owen states that Warden Sepanek denied his BP-9 "Request for Administrative Remedy," but Owen did not attach a copy of that denial to his § 2241 petition. Owen did attach the next administrative denial which "C." Eichenlaub, Director of the BOP's Mid-Atlantic Region, issued on May 23, 2014. *See* D. E. No. 1-2, p. 7. Owen states that the BOP Central Office has not responded to his final appeal, *id.*, p. 5, and correctly asserts that the lack of a response from the Central Office qualifies as a denial of his final appeal. *See* 28 C.F.R. 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.")

Finally, Owen asserts that he is entitled to pursue these claims in a petition for writ of habeas corpus filed under 28 U.S.C. § 2241, claiming that his sentence is being "unlawfully executed" and that his "liberty interests" are being violated by Warden Michael Sepanek. [D. E. No. 1, p. 2] Owen seeks an order directing the BOP to "...remove his management variable as unlawfully imposed in violation of the Ex Post Facto Clause of the Constitution and to cease and desist from the illegal execution of his sentence." [*Id.*] Owen asks this Court to order the BOP to re-evaluate him using the five factors set forth in 18 U.S.C. § 3621(b) "...for immediate consideration into a Federal Prison Camp." [*Id.*, p. 8]

## DISCUSSION

Claims challenging the manner in which a prisoner's sentence is being executed, such as the computation of sentence credits or parole eligibility, are issues which fall under the purview of § 2241. *United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1999) Owen alleges that his claims challenging his PSF and his increased BOP custody classification, which resulted from his PSF, are challenges to the manner in which his federal sentence is being executed, but his assertion in this regard is incorrect. Owen's claims on these issues are, in reality, challenges to the conditions of his confinement at FCI-Ashland.

It is well established that challenges to a prisoner's classification or place of confinement, such as the security classification challenges which Owen advances in this proceeding, are "conditions of confinement" claims which may only be asserted in a civil rights action under 28 U.S.C. § 1331. *See Rodriguez v. Edenfield*, No. 13-CV-48-DCR, 2013 WL 5743916, at *1 (E.D. Ky. Oct. 23, 2013) (denying prisoner's § 2241 petition challenging his BOP security classification because the claim should have been brought in a civil rights action); *Devonshire v. Holder*, No. 11-CV-344-GFVT, 2013 WL 460532, at 2 (E.D. Ky. Feb. 6, 2013) (rejecting prisoner's 2241 petition in which he challenged his PSF, increased security level, and other adverse conditions, because such claims could only be properly asserted in a civil rights action); *Taylor v. Ives*, No. 11-CV-256-GFVT, 2012 WL 6506995, at *2 (E. D. Dec. 12, 2012) (same); *Hunter v. Mulvaney*, No. 2:13-CV-84, 2013 WL 4499036 at *2 (W.D. Mich. Aug. 20, 2013) (prisoner's complaints about his security threat designation and its negative consequences, including a higher security classification and reduced privileges, were claims challenging the conditions of his confinement, not habeas

claims seeking a speedier release from custody); *Bateman v. USP-Big Sandy*, No. 7:10–00146–KKC, 2011 WL 2183553, at *1 (E.D. Ky. June 6, 2011) (petitioner could not seek relief from the conditions of confinement in a § 2241 petition and was instead required to file a civil rights action under 28 U.S.C. § 1331 ); *Simmons v. Curtin*, No. 10-CV- 4751, 2010 WL 5279914, at *1 (E.D. Mich. Dec. 17, 2010) ("Simmons's challenges to his security classification and resulting transfer to a different facility, however, are not attacks upon the execution of his sentence, and therefore, are not cognizable under § 2241."); *McCray v. Rios*, No. 08-206-ART, 2009 WL 103602, at *4 (E.D. Ky. Jan. 14, 2009).

Habeas corpus relief is not available to prisoners who are complaining only of the conditions of their confinement or mistreatment during their legal incarceration. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004); *Lutz v. Hemingway*, 476 F.Supp.2d 715, 718 (E.D. Mich. 2007). Complaints concerning conditions of confinement "do not relate to the legality of the petitioner's confinement, nor do they relate to the legal sufficiency of the criminal court proceedings which resulted in the incarceration of the petitioner." *Lutz*, 476 F.Supp.2d at 718 (quoting *Maddux v. Rose*, 483 F.Supp. 661, 672 (E.D. Tenn.1980)).

If Owen intends to challenge his PSF and his current custody classification at FCI-Ashland, he must do so by filing a civil rights action under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). The filing fee for such an action is $400.00, although Owen may seek pauper status and ask to pay that fee in installments. The dismissal of this action is without prejudice to Owen filing a § 1331 civil rights action asserting his custody/security classification claims.

Even if Owen files a *Bivens* action, he likely would not prevail on the merits of his Fifth Amendment due process and *ex post facto* claims. As for his substantive due process claim, federal prisoners have no constitutional right to be confined in, or transferred to, particular facilities, *see Olim v. Wakinekona*, 461 U.S. 238, 103 S. Ct. 1741 (1983); *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), or to be placed in a specific security classification, *see Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004).

As for the PSF which has been assigned to Owen, 18 U.S.C. § 3621 expressly vests the BOP with discretion to determine both the custody classification and security levels of federal inmates, and the BOP exercises this discretion pursuant to P.S. 5100.08. *Perez v. Lappin*, 672 F.Supp.2d 35, 40 (D.D.C. 2009). The fact that a given PSF may adversely affect a federal inmate's eligibility to participate in certain BOP programs, such as halfway house placement or a one-year sentence reduction which may be awarded upon successful completion of a drug-abuse treatment program, does not violate an inmate's rights to due process and equal protection under the law. *Muniz v. Sabol*, 517 F.3d 29, 40 (5th Cir. 2008); *Meji-Gomez v. DHS/ICE*, No. 05-5000(JBS) 2006 WL 1098226, at *3 (D.N.J. March 31, 2006); *Bazuaye v. Tombone*, 275 F.3d 44 (5th Cir. 2001).

Further, it is unlikely that any violation of the Ex Post Facto Clause has occurred in Owen's case. The PSF does not impose additional punishment, but is instead used by the BOP only as a security tool, and as noted, Owen does not have a constitutional right to a particular security classification allowing him to challenge his level and place of confinement. *See Dyke v. Meachum*, 785 F.2d 267 (10th Cir. 1986). *See also Green v. Bureau of Prisons*, No. Civ. 00-819JRT/JMM, 2002 WL 31548084 (D. Minn. Nov. 12,

2002), in which the district court found no *ex post facto* violation stemming from prisoner's PSF classifying his as a sex offender. There, the court aptly concluded, "Here, Green has not shown that any new law was applied to him retroactively. Moreover, the sex offender PSF does not alter the definition of Green's criminal conduct, nor does it increase the punishment for his crime." *Id.* at *2.

Next, Owen claims that his PSF and security classification were changed without the BOP notifying him in advance, which is a claim alleging the denial of procedural due process of law. Prisoners have no protected liberty interest in a particular security classification; therefore, any complaint relating to the process by which changes were made as to their security classification would fail to state a claim upon which relief can be granted. *Meyer v. Reno*, 911 F. Supp. 11, 17 (D.D.C. 1996); *see Knox v. Lanham*, 895 F. Supp. 750, 759 (D. Md. 1995) (finding that inmates do not have a protected liberty interest in remaining in their particular security classifications). Moreover, under the circumstances of this case, to find a liberty interest in the classification and custody level challenged herein would be to involve the judiciary in "the day-to-day functioning of ... prisons ... [and] ... issues and discretionary decisions that are not the business of federal judges." *Meachum v. Fano*, 427 U.S. at 228-29.

Owen may also be claiming that the BOP's adoption in 2006 of Program Statement 5100.08 violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 507, specifically, the "notice and comment" provisions which require the publication of any "proposed rule-making." *See* 5 U.S.C. 553(b).[2] The APA exempts from notice and comment interpretative

---

[2] The "notice and comment" requirement allows those with interests affected by rules the chance to participate in the promulgation of the rules. As the D.C. Circuit explained in *National Soft Drink*

9

rules or general statements of policy. *See* 5 U.S.C. § 553(b)(3)(A). By issuing a policy statement, an agency simply lets the public know its current enforcement or adjudicatory approach. *Syncor Intern. Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997). The agency retains discretion and authority to change its position, even abruptly, in any specific case because change in its policy does not affect the legal norm. *Id.* Policy statements are binding on neither the public nor the agency. *Id.* (citing cases)[3]

Other courts in this circuit have similarly concluded that pursuant to 18 U.S.C. § 3625, the APA, 5 U.S.C. §§ 554, 555 and 701-706 "do not apply to the making of any determination, decision or order" made by the BOP pursuant to the provisions of 18 U.S.C. § 3621. *Orr v. Hawk*, 156 F.3d 651, 655, n. 1 (6th Cir. 1998) (holding that the BOP is exempt from the judicial review and notice and comment provisions of the APA); *Williams v. Shartle*, No. 4:10-CV-1372, 2010 WL 3370525, at *3 (N.D. Ohio Aug. 24, 2010); *Lopez v. Zych*, No. 09-11440, 2010 WL 890177, at *3 (E.D. Mich. Mar 10, 2010); *Thornton v. Hickey*, No. 10-CV-13-JMH, 2010 WL 399103, at *3 (E.D. Ky. Jan. 25. 2010) ("To the extent Thornton claims the BOP failed to comply with the rulemaking requirements of 5 U.S.C. § 553, a Program Statement is not considered a regulation, but merely an interpretative rule or general statement of policy, both of which are excepted from the APA's

---

*Assn. v. Block*, 721 F.2d 1348, 1353 (D.C. Cir.1983), the § 553 requirements ensure fair treatment for persons to be affected by regulations.

[3] An interpretative rule, on the other hand, typically reflects an agency's construction of a statute that has been entrusted to the agency to administer. *Id.* "The legal norm is one that Congress has devised; the agency does not purport to modify that norm, in other words, to engage in lawmaking. The agency does not claim to be exercising authority to itself make positive law, but instead construes the product of congressional lawmaking "based on specific statutory provisions." *Id.* (citing *United Technologies Corp. v. United States EPA*, 821 F.2d 714, 719 (D.C.Cir. 1987)).

procedural requirements.... This claim is therefore also without merit.") (internal citations omitted). Therefore, the APA is not applicable to Owen's case.

Finally, Owen claims that the FCI-Ashland staff have deliberately discriminated and retaliated against him on the basis of his "political beliefs." [D. E. No. 1, p. 3] Owen may not assert claims alleging discrimination and/or retaliation in a § 2241 petition because such claims are merely challenges to the conditions of his confinement, which also must be pursued in a civil rights action, not a § 2241 habeas petition. *See Davis v. Zuercher*, No. 08-CV-207-KKC, 2009 WL 585807, at *5 (E.D. Ky. Mar. 6, 2009), *aff'd*, No. 09-5398 (6th Cir. Dec. 16, 2009) ("the district court properly dismissed Davis's claims of retaliation and discrimination because those claims do not challenge the execution of his sentence and are therefore not cognizable under § 2241.[4]

The Court parenthetically notes that on its merits, Owen's discrimination claim appears to be unavailing. Owen does not allege that he is a member of any type of suspect class, and where the plaintiff's status is not a suspect class for equal protection analysis, the lowest level of scrutiny applies to prison officials' actions. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1067 (6th Cir. 1994) (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 445–46 (1985)). Prisoners are not a suspect class, *see Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005); nor are classifications of prisoners. *Hampton v. Hobbs*, 106 F.3d 1281,

---

[4] *See also Brown v. Ives*, No. 11-CV-160-HRW, 2012 WL 1633243, at *2 (E. D. Ky. May 9, 2012) (holding that prisoner's retaliation claim could not be asserted in a § 2241 petition); *Bush v. Hogsten*, No. 11-CV-167-KSF, 2011 WL 2682971, at *3 (E.D. Ky. July 11, 2011) (same); *Smith v. Sniezek*, No. 4:07-CV-366, 2007 WL 642017, at *3 (N.D. Ohio Feb. 27, 2007); *Taylor v. Caruso*, No. 2:08-CV-103, 2009 WL 199198, at *1 (W.D. Mich. Jan. 26, 2009) ("Claims of retaliation are properly asserted in the context of a civil rights action filed pursuant to 42 U.S.C. § 1983, and not in the context of a § 2241 action.").

1286 (6th Cir. 1997). Therefore, any district court addressing Owen's discrimination claim need only determine whether the BOP's decision was rationally related to a legitimate government interest. *Taxpayers United v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993). A district court would likely determine that the decision to change Owen's PSF and security classification was consistent with BOP's policy, and that the BOP's policy was clearly rationally related to legitimate governmental interests.

In summary, Owen may not purse either his PSF/security classification challenges or his discrimination and retaliation claims in a § 2241 petition. Owen's habeas petition will be denied without prejudice to Owen's right to file a *Bivens* action asserting these claims.

## CONCLUSION

Accordingly, **IT IS HERBY ORDERED** as follows:

(1) Petitioner Harry Carlos Owen's 28 U.S.C. § 2241 petition for writ of habeas corpus [D. E. No. 1] is **DENIED** without prejudice to Owen's right to file a civil rights action under 28 U.S.C. § 1331 asserting his PSF/security classification challenges and his discrimination and retaliation claims.

(2) The Court will enter an appropriate judgment.

(3) This matter is **STRICKEN** from the active docket.

This November 19, 2014.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge